UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHARON B. IKERD | CIVIL ACTION |
| VERSUS | No. 23-890<br>c/w 23-1330<br>REF: 23-890 |
| BERKSHIRE HATHAWAY HOMESTATE<br>INSURANCE COMPANY ET AL. | SECTION I |

**ORDER AND REASONS**

Before the Court is a motion[1] to exclude the expert opinion of Dr. Jonathan Thompson ("Thompson") filed by defendants Bobby Dillon ("Dillon"), L Dillon Tree Harvesting, LLC, and Berkshire Hathaway Homestate Insurance Company (collectively, "defendants"). Plaintiff Sharon B. Ikerd ("plaintiff") opposes the motion.[2] Defendants filed a reply to plaintiff's opposition.[3] Defendants also filed a motion seeking to strike plaintiff's response as it was filed one day late pursuant to Local Rule 7.5.[4] For the reasons set forth below, the Court denies both motions.

**I. BACKGROUND**

The present action concerns an automobile collision. At the time of the accident, plaintiff was driving a school bus and had stopped to allow children to exit

---

[1] R. Doc. No. 40.
[2] R. Doc. No. 55.
[3] R. Doc. No. 72.
[4] R. Doc. No. 68. Pursuant to Local Rule 7.5, plaintiff's deadline to respond to defendants' motion was November 28, 2023. Plaintiff did not file a response and the time for doing so has passed.

the bus.[5] Plaintiff alleges that Dillon who was driving a tractor trailer carrying a load of logs hit her school bus.[6]

In her complaint, plaintiff complains of "severe, painful, debilitating, and permanently disabling injuries[,]" as well as "severe physical pain and suffering" and "mental anguish" caused by the accident.[7] She alleges that her damages were caused by "the gross and wanton negligence, carelessness, and recklessness" of Dillon.[8] Plaintiff seeks damages for: "[p]ast, present, and future pain and suffering;" "[p]ast, present, and future mental anguish;" "[p]ast, present, and future medical expenses;" "[p]ast, present, and future loss of enjoyment of life;" "[p]ast, present, and future lost wages;" "[p]ermanent disability;" "[p]roperty damage;" and "[o]ther damages itemized at the trial of this matter."[9]

In their motion, defendants seek to exclude Thompson's opinion that the large gap in plaintiff's 4/5 facet joints is "likely from instability from the impact."[10] Defendants argue that the opinion should be excluded for three reasons:

> (1) the opinion is predicated on concepts of accident mechanics, severity of force and expected injuries, all of which are concepts of biomechanical engineering that are outside the scope of his expertise as a pain interventionist; (2) Dr. Thompson employed no methodology, other than relying upon his personal experience as a pain interventionist, in opining that the May 16, 2022 motor vehicle accident likely caused the large gap in plaintiffs 4/5 facets, as he did nothing to test or verify that proposition and instead relied upon his understanding of principles of accident mechanics and impact forces that are beyond the scope of his qualified area of expertise; and (3) the opinion of Dr. Thompson will not

---

[5] R. Doc. No. 1-1, at 12.
[6] *Id.*
[7] *Id.* at 13.
[8] *Id.* at 12.
[9] *Id.* at 13–14.
[10] R. Doc. No. 40, at 1.

be relevant to assist the trier of fact because it lacks foundational support and Dr. Thompson has provided no explanation as to [how] his expertise in pain intervention supports his proposition that the "large gap in the 4/5 facets, likely from instability from the impact."[11]

In response, plaintiff argues that Thompson is the only expert who may testify to medical causation, the differential diagnosis used by Thompson is well-established as reliable, and Thompson's testimony is relevant.[12] Plaintiff also submits that any "perceived deficiencies" in Thompson's testimony go to the weight and credibility of the testimony and are therefore not grounds for exclusion.[13]

## II. STANDARDS OF LAW

### a. Motion to Strike Plaintiff's Response

"Late oppositions are evaluated under Federal Rule of Civil Procedure 6(b)'s "excusable neglect" standard." *Michel v. Ford Motor Co.,* No. CV 18-4738, 2018 WL 10247013, at *1 (E.D. La. Dec. 27, 2018) (Vance, J.) (citing *Vasudevan v. Adm'rs of Tulane Educ. Fund,* 706 F. App'x 147, 151 (5th Cir. 2017) and *Adams v. Travelers Indem. Co. of Conn.,* 465 F.3d 156, 161 (5th Cir. 2006)). "Courts consider the following factors in evaluating excusable neglect: 'the danger of prejudice to the [non-movant], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Id.* (quoting *Adams*, 465 F.3d at 162 n.8).

---

[11] *Id.* at 2.
[12] R. Doc. No. 55, at 1.
[13] *Id.*

**b. Motion to Exclude Thompson's Causation Opinion**

Federal Rule of Evidence 702 governs the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quotations omitted).

The U.S. Supreme Court's decision in *Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). The *Daubert* framework requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the

existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As a general rule, "[q]uestions relating to the bases and sources of an expert's opinions affecting the weight to be assigned that opinion rather than its admissibility should be left for the jury's consideration." *Smith v. Starr Indem. & Liab. Co.*, 807 F. App'x 299, 302 (5th Cir. 2020) (citing *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

With respect to determining the relevance of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). When ruling on the admissibility of expert opinion evidence, "[t]he district court

should, initially, approach its inquiry with the proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo*, 826 F.2d at 422.

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.) (citing *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir.1998)).

### III. ANALYSIS

#### a. Motion to Strike Plaintiff's Response

The Court will first address defendants' motion to strike plaintiff's response because it was filed one day late. As in *Michel*, "plaintiffs filed their responses only one day late, and proceedings were not delayed." No. CV 18-4738, 2018 WL 10247013, at *1. Additionally, "[b]ecause defendants timely filed their repl[y] and did not request a one-day continuance of their deadline, they do not appear to have been prejudiced." *See id*. While plaintiff has not explained her failure to timely respond, there is no evidence of bad faith, and the untimely response has not delayed the proceedings. Therefore, the Court will deny defendants' motion to strike plaintiff's response.

#### b. Motion to Exclude Thompson's Causation Opinion

As explained, defendants raise three objections to the admissibility of Thompson's opinion testimony. The Court will address each objection in turn.

First, defendants assert that Thompson's theory of causation rests on "the severity of forces, mechanics of impact, and anticipated movement of plaintiff's body

6

based on such impact forces and mechanics."[14] Defendants argue that because Thompson is not an expert in biomechanical engineering, he cannot testify to such concepts.[15] In response, plaintiff argues that Thompson is testifying as to medical causation, which he is uniquely qualified to do as plaintiff's treating physician.[16]

A biomechanical engineer may testify as to "the amount of force he believes was generated by the [subject collision] and the observed effect of such force on a *hypothetical* human body in a *comparable* accident." *Collins v. Benton*, No. CV 18-7465, 2020 WL 3605942, at *6 (E.D. La. July 2, 2020) (Brown, J.) (emphasis in original) (quoting *Thomas v. Chambers*, No. CV 18-4373, 2019 WL 1670745, at *4 (E.D. La. Apr. 17, 2019) (Vance, J.)). Unlike biomechanical engineers, "medical doctors are qualified[—]indeed, uniquely qualified[—]to offer opinions as to medical causation." *Layssard v. United States*, No. CIV.A. 06-0352, 2007 WL 4144936, at *3 (W.D. La. Nov. 20, 2007).

Defendants argue that Thompson's testimony "postulating [about] the type of impact and mechanism of jarring forced [that] he believes were produced" in the accident should be excluded because those statements require biomechanical engineering expertise.[17] Yet defendants do not cite to any deposition testimony,[18] medical records, or other evidence that indicates Thompson intends to testify about biomechanics.

---

[14] R. Doc. No. 40-1, at 6.
[15] *Id.*
[16] R. Doc. No. 55, at 5.
[17] R. Doc. No. 72, at 2.
[18] Defendants note in their reply that they have not deposed Thompson. *Id.* at 1.

7

Defendants rely solely on Thompson's statement that the large gap in plaintiff's 4/5 facets was "likely from instability from the impact." However, this statement does not involve expert testimony about the mechanics and severity of force generated in a collision. As plaintiff's treating physician, Thompson may testify about plaintiff's injury, including the alleged cause, based on his experience as a medical doctor. *See Thomas v. G & K Servs. Co.*, No. CIV.A. 01-1637, 2002 WL 34720493, at *1 (E.D. La. Aug. 16, 2002) (Lemmon, J.) (holding that a treating physician could testify, without investigating the fall but based on his experience and the patient's allegedly limited and misleading self-reported history, that a fall caused the plaintiff's injury). Defendants "may cross-examine [Thompson] concerning the basis of his opinion, and the jury is free to evaluate its probative value." *Id.*[19]

Second, defendants argue that Thompson does not rely upon generally accepted or otherwise reliable methodology.[20] Specifically, defendants argue that Thompson did not review any records concerning the vehicular accident and that Thompson does not cite facts or data on which he bases his opinion.[21] In response, plaintiff argues that differential diagnosis is a reliable means for a medical doctor to determine causation.[22]

---

[19] While their motion seeks to exclude Thompson's causation opinion entirely, in reply, defendants state they wish to preclude Thompson only from postulating about the type of impact and jarring forces he believes were produced. R. Doc. No. 72, at 2. There is no indication that Thompson intends to testify about biomechanics. If Thompson's testimony exceeds his medical expertise, the Court will evaluate any objection as appropriate.
[20] R. Doc. No. 40-1, at 7.
[21] *Id.* at 8–9.
[22] R. Doc. No. 55, at 8–9.

As noted by plaintiff,[23] the U.S. Fifth Circuit Court of Appeals has explained that "[a] reliable differential diagnosis typically, though not invariably, is performed after 'physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests,' and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 468 (5th Cir. 2012) (quoting *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir.1999)). Plaintiff states that "[t]hese are the exact steps" that Thompson utilized to reach his conclusion.[24] Defendants do not quote any testimony or cite to any medical records that contradict plaintiff's contention that the differential diagnosis employed by Thompson is reliable.

As mentioned previously, "[q]uestions relating to the bases and sources of an expert's opinions affecting the weight to be assigned that opinion rather than its admissibility should be left for the jury's consideration." *Smith*, 807 F. App'x at 302 (citing *Viterbo*, 826 F.2d at 422). "Further, a doctor's expert testimony 'should not [be] excluded under *Daubert* solely on the ground that his causation diagnosis was based only on his patient's self-reported history.'" *Tripkovich v. Ramirez*, No. CIV.A. 13-6389, 2015 WL 3849392, at *3 (E.D. La. June 22, 2015) (Fallon, J.) (*Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir.2000)); *see also Thomas*, 2002 WL 34720493, at *1 (permitting a treating physician to testify to medical causation based

---

[23] *Id.* at 9.
[24] *Id.* at 10.

9

on his medical experience and the patient's allegedly limited and misleading self-reported history). Accordingly, defendants' concern about the reliability of Thompson's testimony should be raised through cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.

Third, defendants argue that Thompson's opinion lacks fundamental support and is therefore not helpful to the jury.[25] Additionally, defendants argue that Thompson's opinion is contradicted by the lumbar X-rays that he ordered.[26] In response, plaintiff argues that "Thompson's use of a physical examination, taking of patient history, and review of diagnostic imaging is a sufficient foundation for his opinion as to medical causation."[27]

Defendants' third objection goes directly to the bases and sources of Thompson's opinion. Accordingly, this objection should be addressed through cross-examination and the presentation of contrary evidence. *See Daubert*, 509 U.S. at 596.

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that defendants' motion to exclude the causation opinion of Thompson is **DENIED**.

**IT IS FURTHER ORDERED** that defendants' motion to strike plaintiff's response to their motion is **DENIED**.

---

[25] R. Doc. No. 41, at 9–11.
[26] *Id.* at 11.
[27] R. Doc. No. 55, at 13.

New Orleans, Louisiana, November 30, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**